In the

# United States Court of Appeals for the Third Circuit

*1 S.A.N.T., Inc.,*

*Plaintiff-Appellant,*

v.

*National Fire & Marine Ins. Co.,*

*Defendant-Appellee.*

*(Captions continued on next page)*

On Appeal from the judgment of the United States District Court for the Western District of Pennsylvania, dated January 15, 2021

## Petition for Rehearing En Banc of Plaintiffs-Appellants

Gary F. Lynch
Kelly Iverson
Lynch Carpenter LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(412) 322-9243 (Tel.)

James C. Martin
George L. Stewart II
Colin E. Wrabley
Matthew J. Louik
Elizabeth L. Taylor
Ted A. Hages
Reed Smith LLP
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
(412) 288-3131 (Tel.)
jcmartin@reedsmith.com

*Counsel for Plaintiff-Appellant*
*1 S.A.N.T., Inc.*

| No. 20-3124 | No. 21-1038 |
|---|---|
| *Wilson et al.* | *LH Dining LLC* |
| *Plaintiff-Appellant,* | *Plaintiff-Appellant,* |
| *v.* | *v.* |
| *USI Insurance Services LLC,* | *Admiral Indemnity Company,* |
| *Defendants-Appellees.* | *Defendants-Appellees.* |
| **No. 21-1039** | **No. 21-1106** |
| *Newchops Restaurant Comcast LLC* | *Moody, et al.* |
| | *Plaintiff-Appellant,* |
| *Plaintiff-Appellant,* | *v.* |
| *v.* | |
| *Admiral Indemnity Company,* | *The Hartford Financial Services Group Inc.,* |
| *Defendants-Appellees.* | *Defendants-Appellees.* |
| **No. 21-1107** | **No. 21-1175** |
| *ATCM Optical, Inc. et al.* | *Independence Restaurant Group, LLC* |
| *Plaintiff-Appellant,* | *Plaintiff-Appellant,* |
| *v.* | *v.* |
| *Twin City Fire Insurance Co.,* | *Certain Underwriters at Lloyd's, London,* |
| *Defendants-Appellees.* | *Defendants-Appellees.* |
| **No. 21-1240** | **No. 21-1294** |
| *Ultimate Hearing Solutions Li, LLC* | *Whiskey Flats Inc.* |
| *Plaintiff-Appellant,* | *Plaintiff-Appellant,* |
| *v.* | *v.* |
| *Hartford Underwriters Insurance Company,* | *Axis Insurance Company,* |
| *Defendants-Appellees.* | *Defendants-Appellees.* |

ON APPEAL FROM THE JUDGMENTS OF THE UNITED STATES DISTRICT COURTS FOR THE EASTERN AND WESTERN DISTRICTS OF PENNSYLVANIA DATED FROM OCTOBER 2020 THROUGH JANUARY 2021

**STATEMENT OF COUNSEL PURSUANT TO 3d CIR. L.A.R. 35.1**

I express a belief, based on a reasoned and studied professional judgment, that these appeals involve a question of exceptional importance, *i.e.*, whether the panel should have certified to the Supreme Court of Pennsylvania an important and unresolved question of state law—one that the en banc Superior Court of Pennsylvania recently decided in two contradictory rulings that the non-prevailing parties have petitioned the Supreme Court of Pennsylvania to review—where resolution of the question would decide a central issue in these appeals.

*/s/ James C. Martin*

# TABLE OF CONTENTS

Page

I.    Preliminary Statement ................................................................................ 1

II.   Background .............................................................................................. 3

III.  The En Banc Court Should Certify The Important And Unresolved
      "Physical Loss" Question To The Pennsylvania Supreme Court. ......................... 8

      A.   The Case For Certifying The "Physical Loss" Issue To The
           Pennsylvania Supreme Court Is Compelling. ........................................ 8

      B.   The Panel's Predictive Analysis Of Pennsylvania Law Is Flawed. ........... 13

IV.   Conclusion .............................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Another Planet Entm't, LLC v. Vigilant Ins. Co.*,
No. 21-16093, 2022 U.S. App. LEXIS 35763 (9th Cir. Dec. 28, 2022) .................... 8

*Bracey v. Superintendent Rockview SCI*,
986 F.3d 274 (3d Cir. 2021) .................................................................................... 11

*Cohen v. Erie Indemnity Co.*,
432 A.2d 596 (Pa. Super. 1981) .............................................................................. 15

*Fields v. Thompson Printing Co., Inc.*,
363 F.3d 259 (3d Cir. 2004) .............................................................................. 11, 12

*Hakimoglu v. Trump Taj Mahal Assocs.*,
70 F.3d 291 (3d Cir. 1995) ................................................................................ 11, 12

*Kendrick v. Dist. Atty. for the Cnty. of Phil., Pa.*,
488 F.3d 217 (3d Cir. 2007) .................................................................................... 11

*Lawson v. Fortis Ins. Co.*,
301 F.3d 159 (3d Cir. 2002) .................................................................................... 15

*Lexington Ins. Co. v. Rugg & Knopp, Inc.*,
165 F.3d 1087 (7th Cir. 1999) ................................................................................. 12

*MacMiles, LLC d/b/a Grant St. Tavern v. Erie Ins. Exch.*,
No. GD-20-7753, 2021 WL 3079941 (Pa. Com. Pl. May 25, 2021) ........................... 4

*MacMiles, LLC v. Erie Ins. Exchange*,
No. 1100 WDA 2021, 2022 Pa. Super. LEXIS 469 (Pa. Super. Nov.
30, 2022) ............................................................................................................ *passim*

*Melville v. Am. Home Assurance Co.*,
584 F.2d 1306 (3d Cir. 1978) .................................................................................. 10

*Michaels v. New Jersey*,
150 F.3d 257 (3d Cir. 1998) ...................................................................................... 1

*Pa. Nat'l Mut. Cas. Ins. Co. v. St. John*,
106 A.3d 1 (Pa. 2014) ............................................................................................. 14

*Pac. Empl'rs Ins. Co. v. Global Reinsurance Corp. of Am.*,
  693 F.3d 417 (3d Cir. 2012) ......................................................................1

*Port Authority of New York and New Jersey v. Affiliated FM Insurance Company*,
  311 F.3d 226 (3d Cir. 2002) ...............................................6, 7, 13, 14

*Priester v. JP Morgan Chase Bank, N.A.*,
  927 F.3d 912 (5th Cir. 2019) ...............................................................11

*SEC v. Nat'l Sec., Inc.*,
  393 U.S. 453 (1969) ...............................................................................9

*Smith v. Calgon Carbon Corp.*,
  917 F.2d 1338 (3d Cir. 1990) ...............................................................10

*Todd v. Societe BIC, S.A.*,
  9 F.3d 1216 (7th Cir. 1993) ..................................................................13

*Ungarean v. CNA & Valley Forge Ins. Co.*,
  Nos. 490 WDA 2021, 948 WDA 2021, 2022 Pa. Super. LEXIS 467
  (Pa. Super. Nov. 30, 2022) .............................................................*passim*

*Ungarean v. CNA*,
  No. GD-20-006544, 2021 Pa. Dist. & Cnty. Dec. LEXIS 2 (Pa. Com.
  Pl. March 22, 2021) ................................................................................4

*United States v. Defreitas*,
  29 F.4th 135 (3d Cir. 2022) ...........................................................*passim*

*Venoco, LLC v. Plains Pipeline, L.P.*,
  No. 21-55193, 2022 U.S. App. LEXIS 9851 (9th Cir. Apr. 12, 2022) ....................11

**Other Authorities**

Dolores K. Sloviter, *A Federal Judge Views Diversity Jurisdiction through the
  Lens of Federalism*, 78 Va. L. Rev. 1671 (1992)................................................12

## I.      Preliminary Statement

This Court has long acknowledged that *Erie* predictions "intrude[ ] 'on the lawmaking function of' a state and create a '"fundamental incompatibility . . . with the most basic principles of federalism' because 'judges who are not selected under the [S]tate's system and who are not answerable to its constituency are undertaking an inherent state court function.'" *Pac. Empl'rs Ins. Co. v. Global Reinsurance Corp. of Am.*, 693 F.3d 417, 436 (3d Cir. 2012) (citation omitted). These "judicial federalism concerns" are heightened significantly where the applicable "state law is unclear[.]" *Michaels v. New Jersey*, 150 F.3d 257, 259 (3d Cir. 1998) (citations omitted). In that instance, "certification provides the best way to alleviate these problems." *Id.* These principles, however, did not guide the Panel's analysis in this case, and that reality warrants en banc review.

These nine consolidated appeals (Appeals), on analysis, present a textbook case for certification. Each turns on a dispositive legal question that has not been decided by the Pennsylvania Supreme Court and that recently divided nine judges of the en banc Pennsylvania Superior Court.[1] Here, the dispositive question is whether the term "physical loss" in a commercial property business-interruption insurance policy can reasonably be construed to mean the loss of use of physical property for its intended business purpose. That question's resolution is controlling, it is important and recurring,

---

[1]      *See Ungarean v. CNA & Valley Forge Ins. Co.*, Nos. 490 WDA 2021, 948 WDA 2021, 2022 Pa. Super. LEXIS 467 (Pa. Super. Nov. 30, 2022) (en banc) and *MacMiles, LLC v. Erie Ins. Exchange*, No. 1100 WDA 2021, 2022 Pa. Super. LEXIS 469 (Pa. Super. Nov. 30, 2022) (en banc).

and it implicates core state interests in protecting insurance policyholders and insurers in numerous pending cases throughout the Commonwealth.

For these reasons, throughout these appeals, Plaintiffs asked the Court to certify the "physical loss" question to the Pennsylvania Supreme Court—most recently following the en banc Superior Court's conflicting decisions in November. While the prerequisites for certification are present, the Panel rejected that step in one sentence at the end of its opinion, noting only that the "requests for certification … do not satisfy the factors set forth in *United States v. Defreitas*, 29 F.4th 135, 141–43 (3d Cir. 2022)." Op. 43 n.13. The Panel's unexplained rejection is in conflict with *Defreitas* and is an apparent abuse of discretion. The en banc Court accordingly should correct it by certifying the "physical loss" issue to the Pennsylvania Supreme Court.

Although the *Defreitas* factors went unexamined, each one is met on this record. The eventual resolution of the controlling "physical loss" construction issue is unclear in light of the en banc Superior Court's conflicting rulings applying Pennsylvania's insurance policy construction principles. The issue's resolution also has widespread repercussions, as the many pages of briefing and amicus participation highlights. And, where insurance coverage issues are concerned, a state's interests are paramount and divergent outcomes between state and federal courts will lead to forum shopping—the antithesis of cooperative federalism, which this Court "must always be mindful of" in considering certification requests. *Defreitas*, 29 F.4th at 141, 142. There thus is every reason to grant certification in light of the *Defreitas* factors, and no good reason not to.

To be sure, certification rests within the appellate court's discretion, is the exception and not the rule, and most certainly does not typically rise to the level warranting the full Court's attention. But these cases—with widespread and significant ramifications for Pennsylvania, its businesses, and its regulation of insurance law; unclear state law; and pending Supreme Court resolution—present a unique and compelling circumstance where cooperative judicial federalism must take hold. Rehearing should be granted and the "physical loss" issue certified to the Supreme Court of Pennsylvania.[2]

## II.    Background

**Underlying lawsuits and decisions below.** These consolidated appeals involve lawsuits brought by insurance policyholders seeking business-interruption coverage for losses suffered during the COVID-19 pandemic. The policyholders claimed that they sustained a covered "physical loss" when, following the pandemic and resulting government closure orders, they were unable to use their respective properties for their intended business purposes. The insurers refused coverage and Plaintiffs brought these actions.

The district courts granted the insurers' dispositive motions, finding variously that the insureds had not sustained any covered "physical loss" and that coverage was

---

[2]    Alternatively, the Court could elect to stay the issuance of the mandate and hold this petition for rehearing in abeyance until the Pennsylvania Supreme Court definitively resolves *Ungarean* and *MacMiles*.

barred by the policies' "virus" and other exclusions. Plaintiffs appealed and moved this Court to consolidate their appeals. The Court granted consolidation and stayed all appeals "involving insurance coverage for business-interruption losses caused by the COVID-19 pandemic" until resolution of these Appeals. *See* Order, Nos. 20-3124 *et al.* (April 6, 2021). In the course of briefing, Plaintiffs requested certification of the "physical loss" question in their merits briefs and through specific motions. Defendants opposed those requests.

*Ungarean* **and** *MacMiles.* The need for certification was brought into sharp relief by litigation in Pennsylvania state court. In two cases decided in March 2021, Judge Ward of the Court of Common Pleas of Allegheny County granted summary judgment for the policyholders, finding that "physical loss" is an ambiguous term that, construed in favor of the policyholders, provides coverage for the loss of use of business premises resulting from the spread of COVID-19. *See Ungarean v. CNA*, No. GD-20-006544, 2021 Pa. Dist. & Cnty. Dec. LEXIS 2, at *16–17 (Pa. Com. Pl. March 22, 2021); *MacMiles, LLC d/b/a Grant St. Tavern v. Erie Ins. Exch.*, No. GD-20-7753, 2021 WL 3079941 (Pa. Com. Pl. May 25, 2021) (same). The defendant insurers in *Ungarean* and *MacMiles* appealed to the Superior Court of Pennsylvania, which ordered consolidated argument in both cases before the same nine-judge en banc panel. Following briefing and argument in *Ungarean* and *MacMiles*, Plaintiffs moved this Court to stay these Appeals pending the final disposition in those two cases. The Court did not rule on that motion.

On November 30, 2022, the en banc Superior Court issued precedential decisions in *Ungarean* and *MacMiles*. By a 5-4 vote, the en banc court affirmed in *Ungarean*, holding that it was in "full agreement" with Judge Ward's "conclusions" and her "reasoning" and finding "that coverage is owed to Ungarean for his COVID-related business losses under the specific terms of the" policy at issue. *Ungarean*, 2022 Pa. Super. LEXIS 467, at *2. The court found Judge Ward's reasoning and conclusion on the meaning of "physical loss" "compelling" and thus was "convinced the trial court's reasoning is correct, and results in a reasonable interpretation" of "physical loss." *Id.* at *11. On that issue, Judge Ward found that "the most reasonable definition of 'loss' is one that focuses on the act of losing possession and/or deprivation of property instead of one that encompasses various forms of damage to property, *i.e.*, destruction and ruin[,]" thus giving the terms their necessary different meanings. *Id.* at *10.

"Specifically, whereas the meaning of the term 'damage' encompasses all forms of harm to [Ungarean's] property (complete or partial), this [c]ourt conclude[s] that the meaning of the term 'loss' reasonably encompasses the act of losing possession [and/or] deprivation, which includes the loss of use of property absent any harm to [the] property." *Id.* Thus, consistent with Pennsylvania's principles of policy construction, "it is, at a minimum, reasonable to find that Ungarean's loss of the use of his dental practice due to COVID-19 and the governmental orders equated to a direct physical loss of his property." *Id.* at *13.

In *MacMiles*, the en banc Superior Court majority reversed Judge Ward's decision in favor of the policyholder. The policy in *MacMiles* provided coverage "for direct physical 'loss' of or damage to Covered Property[,]" including "loss of 'income' … you sustain due to partial or total 'interruption of business' resulting directly from 'loss' or damage to property on the premises[.]" 2022 Pa. Super. LEXIS 469, at *6. Relying principally on trial-court decisions and opinions from outside Pennsylvania, the *MacMiles* majority found that "physical loss" does not include "mere loss of use of commercial property unaccompanied by physical alteration or other condition immanent in the property that renders the property itself unusable or uninhabitable." *Id.* at *2.

**Proceedings before the Panel.** A week after the *Ungarean* and *MacMiles* rulings, and prior to the Panel's opinion, Plaintiffs renewed their requests to certify or stay pending the Supreme Court's review of *Ungarean* and *MacMiles*. Plaintiffs noted that petitions for review had been filed in the Supreme Court in both cases. Those petitions remain pending.

On January 6, 2023, the Panel issued its opinion affirming on grounds that "physical loss" unambiguously excludes loss of use of physical property for its intended business purpose. With respect to the Pennsylvania Appeals specifically, the Panel cited Pennsylvania insurance policy construction principles but relied largely on this Court's decision in *Port Authority of New York and New Jersey v. Affiliated FM Insurance Company*, 311 F.3d 226 (3d Cir. 2002) (applying New Jersey and New York law). *Port Authority*,

the Panel found, requires a showing "that the functionalities of [ ] properties were nearly eliminated or destroyed, that the structures were made useless or uninhabitable, or that there was an imminent risk of either of those things happening" in order to meet the definition of "physical loss." Op. 31–32. As such, the Panel concluded, loss of "tangible possession of property" is needed. *Id.* at 31. The Panel "predict[ed] that the Supreme Court of Pennsylvania would adopt a similar principle as *Port Authority*[,]" "because there is no substantive law in Pennsylvania at odds with" the Panel's interpretation of *Port Authority* and "nothing unique" about New Jersey or New York law that precluded its adoption as Pennsylvania law. *Id.*

In a footnote, the Panel acknowledged the Superior Court's *Ungarean* and *MacMiles* decisions but found, without explanation, that the "differing outcomes make these decisions a less useful measure in determining how the Supreme Court of Pennsylvania would decide the issues before us, especially because questions of insurance coverage are fact intensive inquiries that depend on the specific language of a policy." Op. 36 n.7. Notwithstanding the divergent results under Pennsylvania law, the Panel predicted that the Supreme Court "would determine that the policies here are unambiguous and do not cover the businesses' losses." *Id.*

**III. The En Banc Court Should Certify The Important And Unresolved "Physical Loss" Question To The Pennsylvania Supreme Court.**

The Panel's ruling on the meaning of "physical loss" conflicts with a recent 5-judge en banc Superior Court ruling and resolves an issue on which the Pennsylvania Supreme Court has not yet spoken. The potential for a conflict between the Panel's ruling and the Supreme Court's ultimate resolution is evident. However, the en banc Court can avoid that outcome and foster cooperative federalism by certifying the "physical loss" issue or staying the mandate in these Appeals until the Pennsylvania Supreme Court decides *Ungarean* and *MacMiles*.

**A. The Case For Certifying The "Physical Loss" Issue To The Pennsylvania Supreme Court Is Compelling.**

Without any analysis, the Panel refused to certify the "physical loss" issue to the Pennsylvania Supreme Court purportedly because the "factors" set forth in this Court's decision in *Defreitas* bearing on certification were "not satisf[ied]." Op. 43 n.13. That terse conclusion is not sustainable. The *Defreitas* factors weigh ***in favor*** of certification, and conclusively so.

**Unsettled and controlling.** The first *Defreitas* factor is whether the question of law's "eventual resolution" is "unclear" and would "control an issue in the case." *Defreitas*, 29 F.4th at 141. Both are true here. The Pennsylvania Supreme Court has not yet decided the meaning of "physical loss"; 9 judges of the Pennsylvania Superior Court recently divided equally on the issue; and numerous courts outside of Pennsylvania disagree on the terms' proper interpretation. *See, e.g., Another Planet Entm't, LLC v.*

*Vigilant Ins. Co.*, No. 21-16093, 2022 U.S. App. LEXIS 35763, at *5, 8 (9th Cir. Dec. 28, 2022) (certifying similar "physical loss" issue to the California Supreme Court because of conflicting decisions from "two different divisions of the Second District of the California Courts of Appeal"). And there is no dispute that the meaning of "physical loss" is controlling—as the Panel's decision itself reflects.

**Important.** The proper construction of "physical loss" has significant importance in these Appeals, the many similar pending cases in this Court and lower federal courts, and future cases turning on that commonplace insurance-policy term. The issue therefore already has recurred many times over, and divergent rulings on the issue from this Court and Pennsylvania's appellate courts could—and likely will—lead to forum shopping. *See Defreitas*, 29 F.4th at 142 (reasoning that the presence of these factors means an issue "***should be*** certified for an immediate and dispositive resolution") (citations omitted; emphasis added).

Moreover, Pennsylvania businesses sustained severe economic harm from the pandemic and government shutdown orders, leading many to financial ruin. Whether the businesses are entitled to insurance coverage thus is critically important to the Commonwealth. Indeed, Pennsylvania has a "paramount state interest in protecting [its insurance] policyholders[,]" *SEC v. Nat'l Sec., Inc.*, 393 U.S. 453, 463 (1969), and "prescribing the standards that will govern the insurance contracts purchased by [their] residents to ensure that the insured and their beneficiaries will be accorded the coverage

deemed adequate by the state." *Melville v. Am. Home Assurance Co.*, 584 F.2d 1306, 1313–14 (3d Cir. 1978).

**Timely and economical.** Plaintiffs made their first certification request at the earliest possible opportunity—in their opening brief in this Court—and then renewed it as circumstances warranted. While Plaintiffs filed the underlying actions in federal court, that is no basis to view their certification request with "skepticism." *Defreitas*, 29 F.4th at 142. When Plaintiffs' cases were filed, no Pennsylvania state court had addressed the meaning of "physical loss" and the issue would be a novel one no matter where the complaints were filed. Moreover, because there is complete diversity in each case, the insurers most assuredly would have removed any state-court action to federal court, only causing further delay in the disposition of Plaintiffs' coverage claims.

Apart from this, certification and a stay of the mandate will promote the efficient, fair, and conclusive resolution of the various coverage suits pending in Pennsylvania. The Panel's prediction of Pennsylvania law will not be binding in the many pending Pennsylvania state-court actions, and it will only be binding (if at all) in the pending federal-court cases until the Pennsylvania Supreme Court weighs in. *See Smith v. Calgon Carbon Corp.*, 917 F.2d 1338, 1343 (3d Cir. 1990) (Court "bound by the holdings of previous panels … in the absence of a clear statement by the Pennsylvania Supreme Court to the contrary").

In contrast, a decision by the Pennsylvania Supreme Court will simultaneously resolve the issues with finality for the state *and* federal suits and avoid a potentially

erroneous prediction from this Court. *See Kendrick v. Dist. Atty. for the Cnty. of Phil., Pa.*, 488 F.3d 217, 219 n.1 (3d Cir. 2007) (noting that certification helps avoid "erroneous predictions" of state law); *Hakimoglu v. Trump Taj Mahal Assocs.*, 70 F.3d 291, 302 (3d Cir. 1995) (acknowledging risk "that federal courts will misanalyze the state's law") (Becker, J., dissenting, joined in relevant part by Nygaard & Alito, JJ.). Certification and a stay also will prevent post-appeal proceedings in the district courts seeking relief from judgment if the Pennsylvania Supreme Court later decides the "physical loss" issue contrary to the Panel—and eliminate unfairness to Plaintiffs and other policyholders who may be unable to seek such relief.[3]

**Failure to exercise discretion.** Certification rests within the Court's sound discretion. But as the Court often has noted, to withstand scrutiny, discretion must be exercised in a meaningful way. *See, e.g.*, *Bracey v. Superintendent Rockview SCI*, 986 F.3d 274, 296 (3d Cir. 2021) (vacating denial of Rule 60(b) motion implicating multifactor legal test where "District Court failed to conduct any analysis at all"). Here, however, the Panel "did not mention" any of the *Defreitas* factors specifically, "much less analyze them in a rigorous fashion." *Fields v. Thompson Printing Co., Inc.*, 363 F.3d 259, 275 (3d Cir. 2004). And the Panel's "conclusory statement" that Plaintiffs' certification requests

---

[3]    *Compare Venoco, LLC v. Plains Pipeline, L.P.*, No. 21-55193, 2022 U.S. App. LEXIS 9851 (9th Cir. Apr. 12, 2022) (reversing denial of Rule 60(b)(6) motion to vacate where California Court of Appeal issued intervening decision undermining federal-court judgment) *with Priester v. JP Morgan Chase Bank, N.A.*, 927 F.3d 912, 913 (5th Cir. 2019) (affirming denial of such motion despite Texas Supreme Court decision disagreeing with Fifth Circuit's prior *Erie* guess in the case).

did "not satisfy" those factors simply is not a meaningful exercise of the Court's discretion. *Id.*; Op. 43 n.13. That failure is consequential for the reasons noted. The controlling *Defreitas* factors conclusively favor certification here.

* * * * *

This Court is "often required to make faithful predictions of how a state supreme court will rule." *Defreitas*, 29 F.4th at 141. But as the Court has acknowledged, federal courts "mak[ing] important state policy" contravenes "basic federalism principles." *Hakimoglu*, 70 F.3d at 302-303 (citation omitted). It also runs the significant risk that the Court will "guess[ ] wrong on questions" of state law. *Id.* (citation omitted). "Until corrected by the state supreme court, [erroneous predictions] inevitably skew the decisions of [those] who rely on them and inequitably affect the losing federal litigant who cannot appeal the decision to the state's supreme court[.]" *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1093 (7th Cir. 1999) (quoting Dolores K. Sloviter, *A Federal Judge Views Diversity Jurisdiction through the Lens of Federalism*, 78 Va. L. Rev. 1671, 1681 (1992)). The Court therefore "must always be mindful of the purpose behind certification: that it 'does, of course, in the long run save time, energy, and resources and helps build a cooperative judicial federalism." *Defreitas*, 29 F.4th at 141.

Here, where a state-law question of insurance policy interpretation has produced conflicting intermediate state appellate court decisions, there is uncertainty involving any prediction that "physical loss" is unambiguous and excludes loss of use of property for its intended purpose. Moreover, given that conflict and the pending petitions for

review in the Pennsylvania Supreme Court, there is little doubt that that Court will definitively resolve the meaning of "physical loss," sooner rather than later. Certification (or a stay) will give the Supreme Court an unfettered opportunity to do so, thus furthering cooperative federalism. And it will "ensure[ ] that the law [this Court] appl[ies] is genuinely state law[,]" as determined by "the only judges who can give definitive answers." *Todd v. Societe BIC, S.A.*, 9 F.3d 1216, 1222 (7th Cir. 1993) (en banc) (Easterbrook, J.). The en banc Court should therefore grant this petition and let the Pennsylvania Supreme Court decide the meaning of "physical loss."

### B.    The Panel's Predictive Analysis Of Pennsylvania Law Is Flawed.

Apart from its certification ruling, the Panel's approach to predicting Pennsylvania law on the meaning of "physical loss" is flawed. This reinforces the need for certification or a stay of the mandate here.

***First***, the Panel adopted the Court's decision in *Port Authority* (applying New Jersey and New York law) as the definitive statement of Pennsylvania law without citing any Pennsylvania law—and indeed, based on the purported ***absence of*** Pennsylvania law "at odds" with its interpretation. Op. 31. The Panel further predicted the Pennsylvania Supreme Court would adopt that interpretation based only on its finding that there was "nothing unique" about New Jersey and New York law "dictat[ing] the result" in *Port Authority*. *Id.* This is not the *Erie* analysis this Court's precedents contemplate.

To start with, there is no reliance on Pennsylvania law for the prediction of Pennsylvania law. Then, the Panel relies on the observation that there is "nothing unique" about New Jersey and New York law that precludes a prediction that Pennsylvania law would follow the Panel's novel interpretation of *Port Authority*. But that observation says nothing affirmative about Pennsylvania law either. And, finally, the Panel is just plain wrong when it says there is "no substantive law in Pennsylvania at odds with" its interpretation of "physical loss"—the 5-judge majority decision of the en banc Superior Court in *Ungarean* squarely contradicts it.

The Panel's reliance on out-of-state authorities does not make up for the failure to look to Pennsylvania law. That much is made clear by the Pennsylvania Supreme Court itself: when the Supreme Court faces "the task of construing and applying insurance contract language" under Pennsylvania law, "caselaw from other jurisdictions is generally inapposite, especially when there is Pennsylvania caselaw directly on point." *Pa. Nat'l Mut. Cas. Ins. Co. v. St. John*, 106 A.3d 1, 23 (Pa. 2014).

**Second**, the Panel applied inconsistent approaches to on-point New Jersey and Pennsylvania intermediate appellate court precedent. The Panel cited several New Jersey Superior Court Appellate Division decisions, finding them to be a "strong indicator" of how the New Jersey Supreme Court would rule. Op. 35. When it came to the Pennsylvania Superior Court's decisions—and, in particular, the explicit holding in *Ungarean* that "physical loss" includes loss of use of business property due to a government edict—the Panel did not even mention the *Ungarean* holding. Rather, it

14

found that the tension between *Ungarean* and *MacMiles* made them "less useful" measures in predicting Pennsylvania law given that insurance coverage questions generally are "fact intensive inquiries that depend on the specific language of a policy." Op. 36 n.7. That reasoning itself is flawed, for several reasons.

One is that the Panel elsewhere noted (correctly) that the construction question involved here was a legal one and, in any event, the "specific language" of the policies in *Ungarean* and *MacMiles* is substantively identical to the policy language in these appeals. Moreover, to the extent the Superior Court's conflicting rulings make it more challenging to predict how the Supreme Court would decide the "physical loss" issue, that is a compelling justification to certify, not to dismiss the rulings as "less useful."

***Third***, the Panel further erred in its finding that "Pennsylvania law rejects the idea that differing [judicial] outcomes necessarily means that policy language is ambiguous." Op. 41 (citations omitted). In doing so, the Panel ignored this Court's and the Superior Court's contrary precedents, which, if followed, would have resulted in a different prediction on the meaning of "physical loss," based on the conflicting outcomes. *See Lawson v. Fortis Ins. Co.*, 301 F.3d 159, 167 (3d Cir. 2002) (""The mere fact that several appellate courts have ruled in favor of a construction denying coverage, and several others have reached directly contrary conclusions, viewing almost identical policy provisions, itself creates the inescapable conclusion that the provision in issue is susceptible to more than one interpretation.") (quoting *Cohen v. Erie Indemnity Co.*, 432 A.2d 596, 599 (Pa. Super. 1981)). At the very least, the potential for ambiguity weighs

in favor of certification to arrive at a definitive resolution. The Panel's *Erie* analysis accordingly provides further support for certification and the en banc Court's intervention.

## IV. Conclusion

For the foregoing reasons, the Court should grant rehearing and certify the "physical loss" issue to the Supreme Court of Pennsylvania; or, at a minimum, stay these Appeals pending the Supreme Court's final disposition in *Ungarean* and *MacMiles*.


Dated: January 20, 2023                    Respectfully submitted,

Gary F. Lynch, Esquire                     */s/ James C. Martin*
Kelly Iverson, Esquire                     James C. Martin
LYNCH CARPENTER LLP                        George L. Stewart, II
1133 Penn Avenue, 5th Floor                Colin E. Wrabley
Pittsburgh, PA  15222                      Matthew J. Louik
Phone:  (412) 322-9243                     Elizabeth L. Taylor
                                           Ted A. Hages
*Counsel for Plaintiff-Appellant*          REED SMITH LLP
*1 S.A.N.T., Inc.*                         REED SMITH CENTRE
                                           225 Fifth Avenue, Suite 1200
                                           Pittsburgh, PA  15222-2716
                                           (412) 288-3131 (Tel.)
                                           jcmartin@reedsmith.com

                                           *Counsel for Plaintiff-Appellant*
                                           *1 S.A.N.T., Inc.*

Laurence S. Berman
Daniel C. Levin
Arnold Levin
Fred S. Longer
LEVIN SEDRAN &
BERMAN LLP
510 Walnut Street
Suite 500
Philadelphia, PA  19106
Phone:  (215) 592-1500
LBerman@lfsblaw.com
DLevin@lfsblaw.com
ALevin@lfsblaw.com
FLonger@lfsblaw.com

Richard M. Golomb
Kenneth J. Grunfeld
GOLOMB SPIRT GRUNFELD
1835 Market Street
Suite 2900
Philadelphia, PA  19103
Phone:  (215) 985-9177
Fax:  (215) 985-4169
rgolomb@golomblegal.com
kgrunfeld@golomblegal.com

*Counsel for Plaintiffs-Appellants LH
Dining, Newchops, ATCM Optical,
Omega Optical Inc., Omega Optical at
Comcast Center LLC, Whiskey Flats Inc.,
Adrian Moody and Robin Jones*

Wilson D. Miles III
Rachel N. Minder
Paul W. Evans
BEASLEY ALLEN CROW METHVIN
PORTS & MILES
218 Commerce Street
Montgomery, AL  36104
Phone:  (334) 269-2343
Fax:  (334) 954-7555
Dee.miles@beasleyallen.com
Rachel.minder@beasleyallen.com
Paul.evans@beasleyallen.com

*Counsel for Plaintiffs-Appellants Adrian Moody,
Robin Jones, ATCM Optical Inc., Omega
Optical Inc., Omega Optical at Comcast Center
LLC, and Whiskey Flats Inc.*

Rhonda Hill Wilson
LAW OFFICES OF
RHONDA HILL WILSON, P.C.
1628 J.F.K. Blvd., Suite 400
Philadelphia, PA  19103
Phone:  (215) 972-0400
Fax:  (215) 972-6756
Rhwilson@philly-attorney.com

*Counsel for Rhonda H. Wilson, Esq. and The
Law Office of Rhonda Hill Wilson, P.C.*

Alan M. Feldman
Daniel J. Mann
Edward S. Goldis
Andrew K. Mitnick
Bethany R. Nikitenko
FELDMAN SHEPHERD
WOHLGELERNTER
TANNER WEINSTOCK &
DODIG, LLP
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
Phone: (215) 567-8300
Fax: (215) 567-8333
afeldman@feldmanshepherd.com
dmann@feldmanshepherd.com
egoldis@feldmanshepherd.com
amitnick@feldmanshepherd.com
bnikitenko@feldmanshepherd.com

James A. Francis
David A. Searles
John Soumilas
FRANCIS MAILMAN SOUMILAS
1600 Market Street
Suite 2510
Philadelphia, PA 19103
Phone: (215) 735-8600
Fax: (215) 940-8000
jfrancis@consumerlawfirm.com
dsearles@consumerlawfirm.com
jsoumilas@consumerlawfirm.com

*Counsel for Plaintiff-Appellant
Independence Restaurant Group d/b/a
Independence Beer Garden*

Alan C. Milstein
SHERMAN, SILVERSTEIN, KOHL,
ROSE & PODOLSKY, P.C.
308 Harper Drive
# 200
Moorestown, NJ 08057
Phone: (856) 661-2078
Fax: (856) 661-2068
amilstein@shermansilverstein.com

*Counsel for Plaintiffs-Appellants Ultimate
Hearing Solutions II, LLC; Ultimate Hearing
Solutions III, LLC; Ultimate Hearing Solutions
IV, LLC; Ultimate Hearing Solutions V,
LLC; and Ultimate Hearing Solutions VI,
LLC*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this petition complies with the word limit of Fed. R. App. P. 35(b)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 3893 words.

REED SMITH LLP

By: _/s/ James C. Martin_

**CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2023, this petition was filed with the Clerk of the Court using the Court's CM/ECF System, which will serve the filing electronically on all registered CM/ECF users.

REED SMITH LLP

By:  */s/ James C. Martin*

# EXHIBIT A

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-3124

_____

RHONDA H. WILSON; THE LAW OFFICES OF RHONDA
HILL WILSON, P.C.,

Appellants

v.

USI INSURANCE SERVICE LLC; HARTFORD
CASUALTY INSURANCE COMPANY

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:20-cv-03384)
District Judge:  Honorable Eduardo C. Robreno

_____

No. 20-3501

_____

TOPPERS SALON & HEALTH SPA, INC.,

Appellant

v.

TRAVELERS PROPERTY CASUALTY COMPANY OF
AMERICA

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:20-cv-03342)
District Judge:  Honorable Joshua D. Wolson

———————

No. 20-3594

———————

4431, INC.; 4431 ASSOC., LP; 3354 WALBERT ASSOC.,
LP; 3354 WALBERT AVENUE ASSOCIATES, LLC;
BLUE GRILLE HOUSE AND WINE BAR; 4131
ASSOCIATES CANDLELIGHT INN; 2960 CENTER
VALLEY PARKWAY, LLC;
3739 WEST CHESTER PIKE, LLC; MELT RESTAURANT
GROUP, LLC; PAXOS RESTAURANTS, INC.; MELT
REAL ESTATE GROUP, LP; TOP CUT STEAKHOUSE,
                                                                Appellants

v.

CINCINNATI INSURANCE COMPANIES;
CINCINNATI INSURANCE COMPANY;
CINCINNATI CASUALTY COMPANY;
CINCINNATI INDEMNITY COMPANY

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania

2

(D.C. No. 5:20-cv-04396)
District Judge:  Honorable Joseph F. Leeson, Junior

———————

No. 21-1038

———————

LH DINING L.L.C., d/b/a River Twice Restaurant,
                                              Appellant

v.

ADMIRAL INDEMNITY COMPANY

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:20-cv-01869)
District Judge:  Honorable Timothy J. Savage

———————

No. 21-1039

———————

NEWCHOPS RESTAURANT COMCAST LLC,
d/b/a CHOPS,
                                              Appellant

v.

ADMIRAL INDEMNITY COMPANY

———————

On Appeal from the District Court
for the Eastern District of Pennsylvania
(D.C. No 2:20-cv-01949)
District Judge:  Honorable Timothy J. Savage

———————

No. 21-1061

———————

BOULEVARD CARROLL ENTERTAINMENT GROUP,
INC.,

Appellant

v.

FIREMAN'S FUND INSURANCE COMPANY

———————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:20-cv-11771)
District Judge:  Honorable Susan D. Wigenton

———————

No. 21-1106

———————

ADRIAN MOODY; ROBIN JONES,
d/b/a Moody Jones Gallery,

Appellants

v.

TWIN CITY FIRE INSURANCE COMPANY

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:20-cv-02856)
District Judge:  Honorable Chad F. Kenney

_____

No. 21-1107

_____

ATCM OPTICAL, INC; OMEGA OPTICAL, INC;
OMEGA OPTICAL AT COMCAST CENTER LLC,
d/b/a OMEGA Optical,

        Appellants

v.

TWIN CITY FIRE INSURANCE COMPANY

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:20-cv-04238)
District Judge:  Honorable Chad F. Kenney

_____

No. 21-1109

_____

1 S.A.N.T., INC.,

        Appellant

v.

NATIONAL FIRE & MARINE INSURANCE COMPANY

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:20-cv-00862)
District Judge:  Honorable William S. Stickman, IV

_____

No. 21-1175

_____

INDEPENDENCE RESTAURANT GROUP, LLC
on behalf of itself and all others similarly situated
d/b/a Independence Beer Garden,

                                        Appellant

v.

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:20-cv-02365)
District Judge:  Honorable Chad F. Kenney

_____

No. 21-1240

_____

ULTIMATE HEARING SOLUTIONS II, LLC;
ULTIMATE HEARING SOLUTIONS III, LLC;
ULTIMATE HEARING SOLUTIONS IV, LLC;
ULTIMATE HEARING SOLUTIONS V, LLC;
ULTIMATE HEARING SOLUTIONS VI, LLC,
Appellants

v.

TWIN CITY FIRE INSURANCE COMPANY

————————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:20-cv-02401)
District Judge:  Honorable Chad F. Kenney

————————

No. 21-1294

————————

WHISKEY FLATS INC.,
T/A Out of Wack Jack's Bar & Grill,
Appellant

v.

AXIS INSURANCE COMPANY

————————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:20-cv-03451)

District Judge: Honorable Chad F. Kenney

_____

No. 21-1315

_____

THE EYE CARE CENTER OF NEW JERSEY, PA, on
behalf of itself and all others similarly situated,
                                        Appellant

v.

TWIN CITY FIRE INSURANCE COMPANY

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:20-cv-05743)
District Judge: Honorable Kevin McNulty

_____

No. 21-1414

_____

IN THE PARK SAVOY CATERERS LLC, t/a The Park
Savoy; IN THE PARK CHATEAU CATERERS LLC, on
behalf of itself and all others similarly situated,
                                        Appellants
v.

SELECTIVE INSURANCE GROUP INC.; SELECTIVE
CASUALTY INSURANCE COMPANY

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:20-cv-06869)
District Judge:  Honorable Madeline C. Arleo

———————

Argued:  September 28, 2022

———————

Before:  CHAGARES, *Chief Judge*, McKEE[*], and PORTER,
*Circuit Judges*

(Opinion filed: January 6, 2023)

———————

Rhonda H. Wilson
8 Penn Center
1628 John F. Kennedy Boulevard, Suite 400
Philadelphia, PA 19103
     *Counsel for Appellants in No. 20-3124*

Daniel J. Dugan [ARGUED]
Neal R. Troum
Spector Gadon Rosen & Vinci
1635 Market Street, 7th Floor
Philadelphia, PA 19103
     *Counsel for Appellant in No. 20-3501*

Robert A. Freedberg
Christian M. Perrucci [ARGUED]

———————————————

[*] Judge McKee assumed senior status on October 21, 2022.

9

Florio Perrucci Steinhardt Cappelli Tipton & Taylor
91 Larry Holmes Drive, Suite 200
Easton, PA 18042
        *Counsel for Appellant in No. 20-3594*

Walter J. Andrews [ARGUED]
Hunton Andrews Kurth
333 Southeast 2 Avenue, Suite 2400
Miami, FL 33131

Scott P. DeVries
Hunton Andrews Kurth
50 California Street, Suite 1700
San Francisco, CA 94111

Michael S. Levine
Hunton Andrews Kurth
2200 Pennsylvania Avenue, N.W.
Washington, DC 20037

Elbert Lin
Hunton Andrews Kurth
951 East Byrd Street
Riverfront Plaza, East Tower
Richmond, VA 23219

John R. Sawyer
Stark & Stark
993 Lenox Drive
Lawrenceville, NJ 08648

Kevin V. Small

Hunton Andrews Kurth
200 Park Avenue
52nd Floor
New York, NY 10166
     *Counsel for Appellant in No. 21-1061*

Laurence S. Berman
Arnold Levin
Daniel C. Levin
Frederick S. Longer
Levin Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
     *Counsel for Appellants in Nos. 21-1106, 21-1107,*
     *21-1038, 21-1039 & 21-1294*

Kenneth J. Grunfeld
Golomb Spirt Grunfeld
1835 Market Street, Suite 2900
Philadelphia, PA 19103
     *Counsel for Appellants in Nos. 21-1106, 21-1107,*
     *21-1294, 21-1038 & 21-1039*

Richard M. Golomb
Golomb Spirt Grunfeld
1835 Market Street, Suite 2900
Philadelphia, PA 19103
     *Counsel for Appellants in Nos. 21-1038, 21-1039*
     *& 21-1294*

Wilson D. Miles, III
Rachel N. Minder

Beasley Allen Crow Methvin Portis & Miles
218 Commerce Street
Montgomery, AL 36104
    *Counsel for Appellant in 21-1294, 21-1106 & 21-1107*

Paul W. Evans
Beasley Allen Crow Methvin Portis & Miles
218 Commerce Street
Montgomery, AL 36104
    *Counsel for Appellant in 21-1294*

R. Bruce Carlson
Carlson Brown
222 Broad Street
P.O. Box 242
Sewickley, PA 15143

Ted A. Hages
Matthew Louik
James C. Martin [ARGUED]
Devin M. Misour
George L. Stewart, II
Colin E. Wrabley
Reed Smith
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222

Kelly K. Iverson
Gary F. Lynch
Lynch Carpenter
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
    *Counsel for Appellant in No. 21-1109*

Alan M. Feldman
Edward S. Goldis
Daniel J. Mann
Andrew K. Mitnick
Bethany R. Nikitenko
Feldman Shepherd Wohlgelernter Tanner Weinstock &
Dodig
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103

James A. Francis
David A. Searles
John Soumilas
Francis Mailman Soumilas
1600 Market Street, Suite 2510
Philadelphia, PA 19103
        *Counsel for Appellant in No. 21-1175*

Alan C. Milstein
Sherman Silverstein Kohl Rose & Podolsky
308 Harper Drive
Suite 200, Eastgate Corporate Center
Moorestown, NJ 08057
        *Counsel for Appellants in No. 21-1240*

James E. Cecchi
Brian F. O'Toole [ARGUED]
Lindsey H. Taylor
Carella Byrne Cecchi Olstein Brody & Agnello
5 Becker Farm Road
Roseland, NJ 07068

Christopher A. Seeger

Seeger Weiss
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
        *Counsel for Appellants in Nos. 21-1414 & 21-1315*

Paul J. Geller
Robbins Geller Rudman & Dowd
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432

Samuel H. Rudman
Robbins Geller Rudman & Dowd
58 South Service Road, Suite 200
Melville, NY 11747
        *Counsel for Appellant in No. 21-1315*

Bethany Barrese
Saxe Doernberger & Vita
233 Mount Airy Road
Basking Ridge, NJ 07920

Brian J. Clifford
Janie A. Eddy
Saxe Doernberger & Vita
35 Nutmeg Drive, Suite 140
Trumbull, CT 06611

Gregory D. Podolak
Saxe Doernberger & Vita
999 Vanderbilt Beach Road, Suite 603
Naples, FL 34108
        *Counsel for Amicus Appellant Saxe Doernberger*
        *& Vita PC*

Gabriel K. Gillett
Jenner & Block
353 North Clark Street, Suite 4500
Chicago, IL 60654
*Counsel for Amici Appellants Pennsylvania Restaurant*
*& Lodging Association and Restaurant Law Center in*
*Nos. 20-3124, 21-1038, 21-1039, 21-1106, 21-1107,*
*21-1109, 21-1175, 21-1240 & 21-1294*

Lisa M. Campisi
Blank Rome
1271 Avenue of the Americas
New York, NY 10020

Charles A. Fitzpatrick, IV
Blank Rome
130 North 18th Street
One Logan Square
Philadelphia, PA 19103
*Counsel for Amicus Appellant United Policyholders*
*Nos. 21-1038, 21-1039, 21-1106, 21-1107, 21-1109 &*
*21-1294*

Nicholas M. Insua
Reed Smith
599 Lexington Avenue, 22nd Floor
New York, NY 10022
*Counsel for Amicus Appellant United Policyholders in*
*No. 21-1061*

Christopher P. Leise
White & Williams
457 Haddonfield Road

Liberty View, Suite 400
Cherry Hill, NJ 08002

Marc L. Penchansky
White & Williams
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103
    *Counsel for Appellee USI Insurance Services LLC in*
    *No. 20-3124*

Wystan M. Ackerman
J. Tyler Butts
Gregory P. Varga
Robinson & Cole
280 Trumbull Street
One Commercial Plaza
Hartford, CT 06103
    *Counsel for Appellee in No. 20-3501*

Richard D. Gable, Jr.
Butler Weihmuller Katz Craig
1818 Market Street, Suite 2740
Philadelphia, PA 19103
    *Counsel for Appellee in Nos. 20-3501, 21-1106, 21-*
    *1107 & Appellee Hartford Casualty Insurance*
    *Company in No. 20-3124*

Jonathan M. Freiman
David R. Roth [ARGUED]
Wiggin & Dana
One Century Tower
265 Church Street

New Haven, CT 06510
*Counsel for Appellee in Nos. 21-1240, 21-1106, 21-1107, 21-1315 & Appellee Hartford Casualty Insurance Company in No. 20-3124*

Sarah D. Gordon
Steptoe & Johnson
1330 Connecticut Avenue, N.W.
Washington, DC 20036
*Counsel for Appellee in Nos. 21-1315, No. 21-1240, 21-1106, 21-1107 & Appellee Hartford Casualty Insurance Company in No. 20-3124*

James L. Brochin
Steptoe & Johnson
1114 Avenue of the Americas, 35th Floor
New York, NY 10036

Ryan M. Chabot
Alan E. Schoenfeld
Wilmer Cutler Pickering Hale & Dorr
7 World Trade Center
250 Greenwich Street
New York, NY 10007
*Counsel for Appellee in No. 21-1315*

John J. Kavanagh
Steptoe & Johnson
1330 Connecticut Avenue, N.W.
Washington, DC 20036
*Counsel for Appellee in Nos. 21-1106, 21-1107, 21-1240 & Appellee Hartford Casualty Insurance Company in No. 20-3124*

Caitlin R. Tharp
Steptoe & Johnson
1330 Connecticut Avenue, N.W.
Washington, DC 20036
    *Counsel for Appellee in No. 21-1240*

Alan I. Becker
Daniel G. Litchfield
Laurence J. W. Tooth
Litchfield Cavo
303 West Madison Street, Suite 303
Chicago, IL 60606
    *Counsel for Appellees in No. 20-3594*

Eric A. Fitzgerald
Hillary Ladov
McAngus Goudelock & Courie
P.O. Box 12519
Columbia, SC 29211

Antonia B. Ianniello
John F. O'Connor, Jr.
Steptoe & Johnson
1330 Connecticut Avenue, N.W.
Washington, DC 20036
    *Counsel for Appellees in Nos. 21-1038 & 21-1039*

Michael D. Hynes
DLA Piper
1251 Avenue of the Americas, 27th Floor
New York, NY 10020

Brett D. Solberg

DLA Piper
845 Texas Avenue, Suite 3800
Houston, TX 77002
  *Counsel for Appellee in No. 21-1061*

Robert L. Byer
Julie S. Greenberg
Duane Morris
625 Liberty Avenue, Suite 1000
Pittsburgh, PA 15222

Damon Vocke
Duane Morris
1540 Broadway
New York, NY 10036
  *Counsel for Appellee in No. 21-1109*

Fred L. Alvarez
David E. Walker
Walker Wilcox Matousek
One North Franklin Street, Suite 3200
Chicago, IL 60606
Paul L. Fields, Jr.
Fields Howell
665 8th Street, N.W.
Atlanta, GA 30318

Marc R. Kamin
Michael J. Smith
Stewart Smith
300 Conshohocken State Road
300 Four Falls Corporate Center, Suite 670
West Conshohocken, PA 19428

Gregory L. Mast
Fields Howell
665 8th Street, N.W.
Atlanta, GA 30318
     *Counsel for Appellee in No. 21-1175*

Michael E. DiFebbo, Jr.
Elizabeth A. Sutton
Kennedys CMK
1600 Market Street, Suite 1410
Philadelphia, PA 19103

Kristin V. Gallagher
Kennedys CMK
120 Mountain View Boulevard
P.O. Box 650
Basking Ridge, NJ 07920

Francis X. Simpson, III
Fowler Hirtzel McNulty & Spaulding
1717 Arch Street, Suite 1310
Philadelphia, PA 19103
     *Counsel for Appellee in 21-1294*

Laura A. Brady
William T. Corbett, Jr.
Coughlin Midlige & Garland
350 Mount Kemble Avenue
P.O. Box 1917
Morristown, NJ 07962

Kenneth J. Brown
Amy M. Saharia

Williams & Connolly
680 Maine Avenue, S.W.
Washington, DC 20024
*Counsel for Appellees in 21-1414*

Laura A. Foggan
Crowell & Moring
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
*Counsel for Amici Appellees American Property
Casualty Insurance Association and National
Association of Mutual Insurance Companies*

————————————

OPINION OF THE COURT

————————————

CHAGARES, <u>Chief</u> <u>Judge</u>.

The plaintiffs in this consolidated appeal are businesses (collectively, the "businesses") that closed or significantly limited their operations in March 2020 after the governors of the states in which they operate issued orders to curb the spread of the coronavirus and the disease it causes, COVID-19. To recover the resultant losses, the businesses filed claims under their respective commercial property insurance policies (the "policies"). Their insurers universally denied coverage, reasoning that the businesses did not suffer a "physical loss of or damage to" property necessary to trigger coverage or that a "virus exclusion" applied and barred coverage.

The businesses then filed lawsuits against their insurers to enforce coverage, arguing that their loss of the ability to use

their properties for the properties' intended business purposes is a "physical loss of" property and that no exclusions bar coverage, either because the exclusions do not apply or because the insurers are estopped from arguing that they do. The insurers filed dispositive motions, and the respective District Courts all found for the insurers. The businesses appealed.

We predict how the Supreme Courts of Pennsylvania and New Jersey would decide the issues before us and hold that the loss of use of a property's intended business purpose is not a physical loss of property covered by the businesses' insurance policies. Because the policies do not cover the businesses' losses, we need not reach the issue of whether the virus exclusions or any other exclusions apply. We will therefore affirm the judgments and orders of the District Courts.

I.

The plaintiffs are businesses in Pennsylvania, New Jersey, New York, Maryland, and Delaware in the food service, medical, health and wellness, art, music, and legal sectors. In March 2020, to curb the spread of COVID-19, the governors of each of those states issued executive orders closing or restricting the activities of nonessential businesses and urging people to stay home whenever possible (the "closure orders"). The businesses were forced to close or significantly limit their operations as a result. Restaurants had to stop on-premises dining and bar service, while medical providers could no longer perform non-emergent procedures. Some businesses that were considered wholly nonessential, such as fitness centers, had to close entirely.

To recover income lost as a result of the closure orders, the businesses filed claims with their respective insurers under their policies' business income, extra expense, and civil authority provisions. The business income provisions in the policies provide coverage for "the actual loss of Business Income" that the businesses sustain "due to the necessary 'suspension' of [their] 'operations' during the 'period of restoration,'" when the "suspension [is] caused by direct physical loss of or damage to" the property and the loss or damage is "caused by or resulting from a Covered Cause of Loss." Joint Consolidated Appendix ("J.A.") 493, 1198, 1615, 2006, 2272, 2811; Appellees' Supplemental App. ("S.A.") 37; Eye Care Joint Appendix ("E.C.J.A.") 96. See also J.A. 887, 1865; Toppers Joint Appendix ("Toppers App.") 55; In the Park Joint Appendix ("I.P.J.A.") 161, 351 (using materially similar language).[1] The extra expense provisions provide coverage for extra expenses that the businesses "incur during the 'period of restoration' that [they] would not have incurred if there had been no direct physical loss or damage" to the property, "caused by or resulting from a Covered Cause of Loss." J.A. 493–94, 887, 1865, 2006, 2811–12; Toppers App.

---

[1] While the policies are not all identical, we discern no material difference among them for the purpose of this dispute. For example, all the policies tie business income and extra expense coverage to the "period of restoration," and the business income provisions of all but two use identical "physical loss of or damage to" language. The two policies that do not use this language nevertheless also require physical loss, see Boulevard Carroll Joint Appendix ("B.C.A.") 65; 4431 Appendix ("4431 App.") 108–09, 128, and the minor differences in wording therefore do not change our analysis.

55–56. <u>See also</u> J.A. 1198–99, 1615, 2272–73; E.C.J.A. 96–97; S.A. 37; B.C.A. 65; 4431 App. 109; I.P.J.A. 161, 351 (using materially similar language). And the civil authority provisions cover losses caused when an "action of civil authority [] prohibits access to" the insured property due to physical loss or damage to property other than the insured premises, caused by "a Covered Cause of Loss." J.A. 494, 888, 1866, 2007, 2812; Toppers App. 56; 4431 App. 109. <u>See also</u> J.A. 1199, 1616, 2273; S.A. 38; E.C.J.A. 97; B.C.A. 77; I.P.J.A. 162, 352 (using materially similar language).[2]

The policies generally define covered cause of loss as "risks of direct physical loss" not otherwise excluded or limited. J.A. 505, 899, 1190, 1607, 1872, 1982, 2264; S.A. 29; Toppers App. 66; E.C.J.A. 88. <u>See also</u> J.A. 2767; B.C.A. 111; 4431 App. 95; I.P.J.A. 150, 340 (using materially similar language). The period of restoration is defined as the time beginning "with the date of direct physical loss or [] damage" and ending on the earlier of (1) the date when the property "should be repaired, rebuilt or replaced with reasonable speed and similar quality," or (2) the date the business "is resumed at a new, permanent location." J.A. 1212–13, 1629–30, 2286–87; S.A. 51–52; E.C.J.A. 110–11. <u>See also</u> J.A. 503, 897, 1871, 2013, 2819; B.C.A. 117; 4431 App. 128–29; Toppers

_____

[2] There is more variance among the civil authority provisions, but each requires "physical loss," damage, or "physical loss of or damage to" another property and an action of civil authority prohibiting access to the insured premises because of that loss or damage. Because the businesses failed to allege or demonstrate physical loss <u>or</u> damage to their or any other properties, <u>see</u> <u>infra</u> Part III, those differences are immaterial to the present dispute.

App. 64–65; I.P.J.A. 139–40, 329–30 (using materially similar language, with some difference — immaterial to this dispute — as to when the period of restoration starts).

Most of the policies also contain some form of a so-called "virus exclusion" that excludes from coverage losses caused by or relating to a virus. J.A. 516, 910, 1887, 2766; Toppers App. 416; I.P.J.A. 136, 326; J.A. 293; 1284, 1703, 2367; E.C.J.A. 197; J.A. 2029, 2031; B.C.A. 66–67. Some policies also exclude "loss or damage caused directly or indirectly by . . . [t]he enforcement of any ordinance or law . . . [r]egulating the construction, use or repair of any property" (the "ordinance or law exclusion"). J.A. 45–46.

The insurers universally denied the businesses' claims, and the businesses filed lawsuits in New Jersey and Pennsylvania courts to enforce coverage.[3] The insurers filed dispositive motions — to dismiss under Federal Rule of Civil Procedure 12(b)(6), for judgment on the pleadings under Rule 12(c), or for summary judgment under Rule 56 — which were granted by the District Courts. Most courts found that loss of use was not a "physical loss of" property within the meaning of the policies, 4431 App. 22–23; J.A. 91, 118, 138, 159–60, 182, 209–10; some reasoned that the policies required physical damage to covered property, Toppers App. 646–47; B.C.A 5; J.A. 44; and others found that even if there were coverage, a virus exclusion barred the businesses' claims, J.A. 22–24; I.P.J.A. 6, E.C.J.A. 10. The businesses timely appealed. This Court then consolidated these fourteen appeals, given the similarities among them.

---

[3] Most cases were initiated in federal court, while some were initiated in state court and then removed to federal court.

II.

The District Courts had jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291. We review the District Courts' grant of the insurers' dispositive motions de novo, Watters v. Bd. of Sch. Dirs. of City of Scranton, 975 F.3d 406, 412 (3d Cir. 2020) (motion to dismiss); Prusky v. Reliastar Life Ins. Co., 445 F.3d 695, 699 (3d Cir. 2006) (summary judgment); Allah v. Al-Hafeez, 226 F.3d 247, 249 (3d Cir. 2000) (judgment on the pleadings), and may affirm on any ground supported by the record, Watters, 975 F.3d at 412. We also review de novo the District Courts' interpretations of state law. Meyer v. CUNA Mut. Ins. Soc'y, 648 F.3d 154, 162 (3d Cir. 2011).

We apply the same standard to motions to dismiss and for judgment on the pleadings, Wolfington v. Reconstructive Orthopaedic Assocs. II PC, 935 F.3d 187, 195 (3d Cir. 2019): "we accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face,'" Watters, 975 F.3d at 412 (motion to dismiss) (quoting Vorchheimer v. Philadelphian Owners Ass'n, 903 F.3d 100, 105 (3d Cir. 2018)); see also Allah, 226 F.3d at 249 (judgment on the pleadings). We disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements. Oakwood Lab'ys LLC v. Thanoo, 999 F.3d 892, 904 (3d Cir. 2021). In reviewing a motion for summary judgment, we apply the same standard as the District Court, "[d]rawing all reasonable inferences in favor of the party against whom judgment is sought" and affirming the grant of the motion "only when no

issues of material fact exist and the party for whom judgment is entered is entitled to judgment as a matter of law." <u>Prusky</u>, 445 F.3d at 699. Because the businesses' claims arise under state law, we predict how the Supreme Courts of Pennsylvania and New Jersey would decide the issues before us.[4] <u>Koppers Co. v. Aetna Cas. & Sur. Co.</u>, 98 F.3d 1440, 1445 (3d Cir. 1996).

## III.

The businesses challenge the District Courts' dismissals of their complaints and grants of judgments on the pleadings and summary judgment to the insurers. Central to this challenge is whether the businesses' inability to use their properties for their intended business purposes constitutes "physical loss of" property as that phrase is used in the policies. Predicting how the Supreme Courts of Pennsylvania and New Jersey would decide this issue and following our decision in <u>Port Authority of New York and New Jersey v. Affiliated FM Insurance Company</u>, 311 F.3d 226 (3d Cir. 2002), we hold that it does not.

Under both Pennsylvania and New Jersey law, our role in interpreting an insurance policy is to "ascertain the intent of the parties as manifested by the language of the written instrument." <u>Am. Auto. Ins. Co. v. Murray</u>, 658 F.3d 311, 320 (3d Cir. 2011) (quotation marks omitted) (applying Pennsylvania law); <u>Manahawkin Convalescent v. O'Neill</u>, 85 A.3d 947, 958 (N.J. 2014). We read the policy as a whole and in accordance with the plain and ordinary meaning

---

[4] The parties agree that Pennsylvania and New Jersey law applies to this appeal, as do we.

of its terms. <u>Am. Auto. Ins. Co.</u>, 658 F.3d at 320; <u>Cypress Point Condo. Ass'n, Inc. v. Adria Towers, L.L.C.</u>, 143 A.3d 273, 280 (N.J. 2016).

Where the policy language is clear and unambiguous, we must enforce that language as written. <u>Am. Auto. Ins. Co.</u>, 658 F.3d at 321; <u>Cypress Point Condo. Ass'n</u>, 143 A.3d at 280. Language is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." <u>Hutchison v. Sunbeam Coal Corp.</u>, 519 A.2d 385, 390 (Pa. 1986); <u>see also</u> <u>Cypress Point Condo. Ass'n</u>, 143 A.3d at 280. Ambiguous provisions in an insurance policy must be construed in favor of the insured and against the insurer. <u>Med. Protective Co. v. Watkins</u>, 198 F.3d 100, 104 (3d Cir. 1999) (applying Pennsylvania law); <u>Flomerfelt v. Cardiello</u>, 997 A.2d 991, 996 (N.J. 2010). Whether policy language is ambiguous "is not a question to be resolved in a vacuum." <u>Madison Constr. Co. v. Harleysville Mut. Ins. Co.</u>, 735 A.2d 100, 106 (Pa. 1999). Rather, terms of an insurance policy are ambiguous "if they are subject to more than one reasonable interpretation when applied to a particular set of facts." <u>Id.</u>; <u>see also</u> <u>Cypress Point Condo. Ass'n</u>, 143 A.3d at 280. Courts will not, however, "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity." <u>Madison Constr. Co.</u>, 735 A.2d at 106. And if possible, "a court should interpret the policy so as to avoid ambiguities and give effect to all of its provisions." <u>Am. Auto. Ins. Co. Auto.</u>, 658 F.3d at 321.

To state a successful claim for coverage under an insurance policy, an insured must first make a prima facie showing that its claim falls within the policy's grant of coverage. <u>See</u> <u>State Farm Fire & Cas. Co. v. Est. of Mehlman</u>,

589 F.3d 105, 111 (3d Cir. 2009) (applying Pennsylvania law); Hartford Accident & Indem. Co. v. Aetna Life & Cas. Ins. Co., 483 A.2d 402, 408 (N.J. 1984). The insurer then bears the burden to demonstrate that a policy exclusion applies. State Farm Fire & Cas. Co., 589 F.3d at 111; Hartford Accident & Indem. Co., 483 A.2d at 409. "[E]xclusions are always strictly construed against the insurer and in favor of the insured." Nationwide Mut. Ins. Co. v. Cosenza, 258 F.3d 197, 206–07 (3d Cir. 2001) (applying Pennsylvania law); see also Villa v. Short, 947 A.2d 1217, 1222 (N.J. 2008). If an exclusion applies, the insured then bears the burden to show an exception to that exclusion applies to restore coverage. Cypress Point Condo. Ass'n, 143 A.3d at 286 (applying New Jersey law); N. Ins. Co. of N.Y. v. Aardvark Assocs., Inc., 942 F.2d 189, 195 (3d Cir. 1991) (applying Pennsylvania law).

We begin our analysis, therefore, considering whether the businesses demonstrated that their claims fall within the policies' grant of coverage, starting with the business income and extra expense provisions.

## A.

To establish coverage under the business income and extra expense provisions,[5] the businesses must show that their operations were suspended because of "direct physical loss of

---

[5] The policies' extra expense provisions require "direct physical loss or damage to property," while the business income provisions generally require "direct physical loss of or damage to property." Because we discern no material difference between these two formulations, we analyze the business income and extra expense provisions together.

or damage to" the properties.  The businesses argue that the loss of their ability to use their properties for their intended business purposes constitutes "physical loss of" the properties. We disagree.

1.

The policies do not define the phrase "physical loss of or damage," so we start with the plain meaning of the text. Loss means the failure to keep or maintain possession or "the state or fact of being destroyed." Loss, MERRIAM WEBSTER-UNABRIDGED DICTIONARY ONLINE, https://unabridged.merriam-webster.com/unabridged/loss (last visited Oct. 13, 2022); see also Loss, BLACK'S LAW DICTIONARY (11th ed. 2019).  Damage means "injury or harm to . . . property." Damage, MERRIAM WEBSTER-UNABRIDGED DICTIONARY ONLINE, https://unabridged.merriam-webster.com/unabridged/damage (last visited Oct. 13, 2022). Under the plain language of the policies, the loss or damage must be physical, which means "natural[,] tangible, concrete," Physical, OXFORD ENGLISH DICTIONARY ONLINE, https://www.oed.com/view/Entry/143120?rskey=DAEbpp&result=2#eid (last visited Oct. 13, 2022), and "[o]f or relating to, or involving material things; pertaining to real, tangible objects," Physical, BLACK'S LAW DICTIONARY (11th ed. 2019).

Physical damage to property therefore typically means "'a distinct, demonstrable, and physical alteration' of its structure." Port Auth. of N.Y. & N.J., 311 F.3d at 235 (quoting 10 Couch on Ins. § 148.46 (3d ed. 1998)).  And physical loss of property means a failure to maintain tangible possession of the structure.

In *Port Authority*, however, we explained that "[p]hysical damage to a building as an entity by sources unnoticeable to the naked eye must meet a higher threshold." Id. We held that in the case of asbestos contamination, physical loss or damage to property occurred

> only if an actual release of asbestos fibers from asbestos containing materials has resulted in contamination of the property such that its function is nearly eliminated or destroyed, or the structure is made useless or uninhabitable, or if there exists an imminent threat of the release of a quantity of asbestos fibers that would cause such loss of utility.

Id. at 236 (emphasis added).

We applied New Jersey and New York law in *Port Authority*, but nothing unique about those states' laws dictated the result. For that reason, and because there is no substantive law in Pennsylvania at odds with our decision, we predict that the Supreme Court of Pennsylvania would adopt a similar principle as *Port Authority* and hold that *Port Authority* applies in a case where sources unnoticeable to the naked eye — here, the coronavirus and resultant closure orders — have allegedly reduced the use of the property to a substantial degree. This standard ensures that an insured will have lost tangible possession of property sufficient to constitute physical loss or damage. The businesses therefore must show that the functionalities of their properties were nearly eliminated or destroyed, that the structures were made useless or

uninhabitable, or that there was an imminent risk of either of those things happening.

The businesses argue that their loss of the ability to use their properties for their intended business purposes meets this standard. We disagree. The businesses' argument is completely divorced from the physical condition of the premises. The businesses lost the ability to use their properties for their intended business purposes because the governors of the states in which they operate issued orders closing or limiting the activities of nonessential businesses, not because there was anything wrong with their properties. The properties were not destroyed in whole or in part; their structures remained intact and functional.

Regardless, the loss of the ability to use property in certain ways does not render the properties useless or uninhabitable. The properties could certainly be used or inhabited, just not in the way the businesses would have liked. Restaurants remained open for carry out, and medical providers could perform emergency procedures. While we recognize that some wholly nonessential businesses, such as Toppers Salon & Health Spa, Inc. ("Toppers"), had to close entirely for a time, again, that closure and resultant loss of use was due entirely to the closure orders and had nothing to do with the physical condition of the premises. No one was "physically restrained" from entering the businesses' properties, as counsel for Toppers suggested during oral argument. The closure orders simply prohibited the businesses from using their properties in certain ways.

At bottom, loss of use caused by government edict and untethered to the physical condition of the premises is not a

physical loss or damage to the properties.  We therefore hold that loss of use of intended purpose under the circumstances presented here is not a physical loss of property within the meaning of the policies.[6]

Other terms in the policies support our conclusion that loss of use must involve some physicality.  For instance,

---

[6] We consider this appeal entirely on its own merits but note that every other Court of Appeals and all but one state supreme court to have considered this issue also has held that loss of use caused by closure orders issued in response to the COVID-19 pandemic does not constitute physical loss or damage sufficient to trigger property insurance coverage.  See Legal Sea Foods, LLC v. Strathmore Ins. Co., 36 F.4th 29 (1st Cir. 2022); 10012 Holdings, Inc. v. Sentinel Ins. Co., 21 F.4th 216 (2d Cir. 2021); Uncork & Create LLC v. Cincinnati Ins. Co., 27 F.4th 926 (4th Cir. 2022); Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co., 22 F.4th 450 (5th Cir. 2022); Santo's Italian Café LLC v. Acuity Ins. Co., 15 F.4th 398 (6th Cir. 2021); Sandy Point Dental, P.C. v. Cincinnati Ins. Co., 20 F.4th 327 (7th Cir. 2021); Oral Surgeons, P.C. v. Cincinnati Ins. Co., 2 F.4th 1141 (8th Cir. 2021); Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am., 15 F.4th 885 (9th Cir. 2021); Goodwill Indus. of Central Okla., Inc. v. Phila. Indem. Ins. Co., 21 F.4th 704 (10th Cir. 2021); Gilreath Family & Cosmetic Dentistry, Inc. v. Cincinnati Ins. Co., No. 21-11046, 2021 WL 3870697 (11th Cir. Aug. 31, 2021); Wakonda Club v. Selective Ins. Co. of Am., 973 N.W.2d 545 (Iowa 2022); Tapestry, Inc. v. Factory Mut. Ins. Co., No. 1 Sept. Term, 2022, 2022 WL 17685594 (Md. Dec. 15, 2022); Verveine Corp. v. Strathmore Ins. Co., 184 N.E.3d 1266 (Mass. 2022); Neuro-Commc'n Servs., Inc. v. Cincinnati Ins. Co., No. 2021-0130, 2020 WL

coverage exists only during the "period of restoration," which ends when the property should be "repaired, rebuilt or replaced" or is moved to a new location. As Toppers conceded during oral argument, there is nothing to repair, rebuild, or replace in any of these cases. The businesses' loss of use would be — and was — cured by an end to the closure orders, and not by the rebuilding or repairing of any property. We must read the policies as a whole and give effect to the whole policy, including the "period of restoration" language. See USX Corp. v. Liberty Mut. Ins. Co., 444 F.3d 192, 200 (3d Cir. 2006) ("Pennsylvania courts long have admonished that 'contract terms will not be construed in such a manner so as to render them meaningless,' and we decline to do so here." (citation omitted)); Cypress Point Condo. Ass'n, 143 A.3d at 280 ("The court's responsibility [under New Jersey law] is to give effect to the whole policy, not just one part of it." (quotation marks omitted)). The businesses' proposed

---

17573883 (Ohio Dec. 12, 2022); Cherokee Nation v. Lexington Ins. Co., No. 119,359, 2022 WL 4138429 (Okla. Sept. 13, 2022); Sullivan Mgmt., LLC v. Fireman's Fund Ins. Co., No. 2021-001209, 2022 WL 3221920 (S.C. Aug. 10, 2022); Hill & Stout, PLLC v. Mut. of Enumclaw Ins. Co., 515 P.3d 525 (Wash. 2022) (en banc); Colectivo Coffee Roasters, Inc. v. Soc'y Ins., 974 N.W.2d 442 (Wis. 2022); but see Huntington Ingalls Indus., Inc. v. Ace Am. Ins. Co., No. 2021-173, 2022 WL 4396475, at *11 (Vt. Sept. 23, 2022) (holding that a complaint that alleged COVID-19 adhered to and altered property survived judgment on the pleadings under Vermont's "extremely liberal" pleading standard).

interpretation of physical loss or damage would render the "period of restoration" language superfluous.

Recent decisions from the Superior Court of New Jersey, Appellate Division, also support our conclusion that the businesses did not suffer physical loss or damage. In three cases like those before us, the Appellate Division determined that loss of use caused by New Jersey's closure orders did not constitute physical loss or damage under commercial property insurance policies. See Mac Prop. Grp. LLC & The Cake Boutique LLC v. Selective Fire & Cas. Ins. Co., 278 A.3d 272 (N.J. Super. Ct. App. Div. 2022); AC Ocean Walk, LLC v. Am. Guarantee & Liab. Ins. Co., No. A-1824-21, 2022 WL 2254864 (N.J. Super. Ct. App. Div. June 23, 2022); Rockleigh Country Club, LLC v. Hartford Ins. Grp., No. A-1826-21, 2022 WL 2204374 (N.J. Super. Ct. App. Div. June 21, 2022). Those decisions are a strong indicator of how the Supreme Court of New Jersey would decide the issues before us, see Edwards v. HOVENSA, LLC, 497 F.3d 355, 361 (3d Cir. 2007), and therefore reinforce our conclusion that there is no business income or extra expense coverage here.[7]

---

[7] The Superior Court of Pennsylvania has issued two decisions addressing whether property insurance provides coverage for losses incurred under circumstances similar to those here. The court in MacMiles, LLC v. Erie Ins. Exch., No. 1100 WDA 2021, 2022 WL 17332910, at *4 (Pa. Super. Ct. Nov. 30, 2022), held that there was no coverage for loss of use of a commercial property unaccompanied by any physical alteration or other physical condition that rendered the property unusable or uninhabitable. The same panel in Ungarean v. CAN, Nos. 490 WDA 2021, 948 WDA 2021, 2022 WL

2.

The businesses make several counterarguments, none of which are availing.

First, the businesses argue that because the policies cover "physical loss of <u>or</u> damage to property," loss must mean something other than damage. We agree, but that does not change our holding. There can be physical loss without damage, such as the case of a landslide "leaving [a] home standing on the edge of and partially overhanging a newly-formed 30-foot cliff" without physically damaging the structure itself, <u>see</u> <u>Hughes v. Potomac Ins. Co. of D.C.</u>, 199 Cal. App. 2d 239, 243, 248–49 (Cal. Dist. Ct. App. 1962), or "a portable grill or a delivery truck [being] stolen without a scratch," <u>Santo's Italian Café</u>, 15 F.4th at 404. We also agree

_____

17334365, at *4–5, *10–11 (Pa. Super. Ct. Nov. 30, 2022), in contrast, determined that the policy at issue was ambiguous and held that the policy covered the insured's COVID-related business losses. The differing outcomes make these decisions a less useful measure in determining how the Supreme Court of Pennsylvania would decide the issues before us, especially because questions of insurance coverage are fact intensive inquiries that depend on the specific language of a policy. <u>See</u> <u>Ungarean</u>, 2022 WL 17334365, at *11; <u>MacMiles</u>, 2022 WL 17332910, at *8 (Panella, J. concurring). We nevertheless have carefully reviewed the reasoning of both decisions and predict that the Supreme Court of Pennsylvania, like the overwhelming majority of state and federal jurisdictions that have considered the issue, would determine that the policies here are unambiguous and do not cover the businesses' losses.

with the businesses that the definition of the term "loss" can include loss of use. But it does not follow that every loss of use is necessarily a physical loss, and for the reasons explained above, there was no physical loss here.

One business, 1 S.A.N.T., Inc. ("1 S.A.N.T."), argues that under Port Authority, we must look to the functionality of the properties and, to do that, we must look to the properties' intended use.[8] Our discussion of "utility" and "function" in Port Authority, however, was in the context of discussing the building or structure itself, not the purpose for which the structure is used. See Port Auth. of N.Y. & N.J., 311 F.3d at 236 (explaining that loss requires that the "structure" be rendered "uninhabitable and unusable"; that the "form or quantity" of a contaminant must "make the building unusable"; and that there is no loss when the "structure continues to function." (emphasis added)). When a structure's function is nearly eliminated or destroyed, or the property is rendered uninhabitable or unusable, the building itself is rendered completely (or almost completely) useless as a structure until there is remediation or relocation. In other words, there is a complete (or near complete) dispossession of property, regardless of the purpose for which that property is used. This operational utility is what we mean by functionality, not the intended business purpose at or within a property that is physically unaffected.

---

[8] Along the same lines, 1 S.A.N.T. argues that we must consider the businesses' intended business purposes because it is implicit in the policies. Our role, however, is to interpret the language of the policies as written, and the businesses' intended purposes is nowhere in the text.

Several businesses similarly argue that the actual or suspected presence of the coronavirus on their premises rendered the properties unsafe and uninhabitable, comparing the coronavirus to contamination by noxious substances, such as ammonia or gasoline, which courts have determined to be covered under commercial insurance policies. Where courts have found that such a substance caused physical loss or damage, however, the substance was present to such a degree that it became physically dangerous to be inside of the building, rendering the building useless until there was some kind of remediation. See Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am., No. 2:12-cv-04418, 2014 WL 6675934, at *6 (D.N.J. Nov. 25, 2014) (finding "physical loss of or damage to" property where an ammonia release in a packaging facility "physically transformed the air . . . so that it contained an unsafe amount of ammonia or that the heightened ammonia levels rendered the facility unfit for occupancy until the ammonia could be dissipated"); W. Fire Ins. Co. v. First Presbyterian Church, 437 P.2d 52, 55 (Colo. 1968) (holding that an accumulation of gasoline around a church constituted a "loss of use" when the building "became so infiltrated and saturated" with gasoline that it became "uninhabitable").

As we explained in Port Authority, the presence of a dangerous substance alone does not constitute a loss; there is no physical loss until the substance is "in such form or quantity as to make the building unusable." Port Auth. of N.Y. & N.J., 311 F.3d at 236; see also Western Fire, 437 P.2d at 55 ("[T]here was no direct physical loss sustained on, for example, the first day that gasoline actually seeped onto the insured's premises. To the contrary, no direct physical loss was incurred by the insured until the [a]ccumulation of gasoline under and around the church [b]uilt up to the point

that there was such infiltration and contamination of the foundation, walls and rooms of the church building as to render it uninhabitable and make the continued use thereof dangerous."). And here, no business alleged that the coronavirus was present in its property in such a form or quantity as to make the property dangerous and uninhabitable. Even at its peak, buildings in which the coronavirus inevitably amassed — such as hospitals and grocery stores — remained open and inhabitable. Indeed, as the Ultimate Hearing Solutions businesses[9] acknowledge, whether the coronavirus was present in their properties would have made no difference: the closure orders applied to nonessential businesses across the board, regardless of the presence of the virus on the businesses' properties.[10]

---

[9] The Ultimate Hearing businesses are Ultimate Hearing Solutions II, LLC, Ultimate Hearing Solutions III, LLC, Ultimate Hearing Solutions IV, LLC, Ultimate Hearing Solutions V, LLC, and Ultimate Hearing Solutions VI, LLC.

[10] Boulevard Carroll Entertainment Group, Inc. ("Boulevard Carroll"), argues that its policy's provision of communicable disease coverage — which it concedes does not apply here — necessarily means that a virus can cause damage. But whether a virus <u>can</u> cause damage is a separate issue from whether the coronavirus <u>did</u> cause damage here. No business, including Boulevard Carroll, pled facts sufficient to suggest that it did.

At oral argument, Boulevard Carroll stated that it should have, at least, been given leave to amend its complaint to correct any pleading deficiencies. We need not reach this issue, however, because Boulevard Carroll forfeited it. Boulevard Carroll did not move for leave to amend before the District Court, and it

Toppers and 1 S.A.N.T. argue that we should ignore the "period of restoration" language in the policies. They say, respectively, that language is relevant only when coverage may be prematurely terminated or when a repair is needed. But that is not what the policies say. Rather, the policies provide that the insurers "will pay for the [losses the businesses] sustain due to the necessary 'suspension' of [their] 'operations' <u>during the</u> <u>'period of restoration</u>'." J.A. 1865 (emphasis added); <u>see also</u> Toppers App. 55 (using the same language). By providing business income and extra expense coverage only during the period of restoration, the plain language of the policies makes the period of restoration language relevant to any business income or extra expense claim. We must look to the text of the policies and when that text is clear, as it is here, enforce that language as written. <u>Am. Auto. Ins. Co.</u>, 658 F.3d at 321; <u>Cypress Point Condo. Ass'n</u>, 143 A.3d at 280. We therefore must consider the period of restoration language.

Finally, the businesses argue that, at the very least, the policy language is ambiguous. The Eye Care Center of New Jersey, PA ("Eye Care"), and In The Park Savoy Caterers LLC

---

failed to develop the argument adequately in its opening brief. <u>See</u> <u>Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.</u>, 877 F.3d 136, 145 (3d Cir. 2017) ("To be preserved, all arguments must be supported specifically by 'the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.' As a result, we have consistently refused to consider ill-developed arguments or those not properly raised and discussed in the appellate briefing." (quoting Fed. R. App. P. 28(a)(8)(A)); <u>Doeblers' Pa. Hybrids, Inc. v. Doebler</u>, 442 F.3d 812, 821 n.10 (3d Cir. 2006) (noting that "passing and conclusory statements do not preserve an issue for appeal").

and In The Park Chateau Caterers LLC (together, "Park Caterers"), in particular, argue that because some courts have found physical loss or damage in purportedly similar circumstances, the phrase "physical loss of or damage" must be ambiguous. We are unconvinced. Pennsylvania law rejects the idea that differing outcomes necessarily means that policy language is ambiguous. See Madison Constr. Co., 735 A.2d at 106–08 (applying Pennsylvania law) (finding the definition of "pollutant" "clear[] and unambiguous[]" despite "the wide divergence of viewpoints among [] jurisdictions" on similar issues); Lower Paxton Twp. v. U.S. Fid. & Guar. Co., 557 A.2d 393, 400 n.4 (Pa. Super. Ct. 1989) ("reject[ing]" the contention that "where a provision in an insurance policy has been construed in different ways by the various courts that have considered it, this alone mandates that we find the provision ambiguous"). And under New Jersey law, which governs Eye Care's and Park Caterers' claims, there is no split in authority: the Appellate Division has uniformly held that losses caused by the closure orders are not physical losses. Under the facts here, the policies unambiguously do not provide coverage because there has been no physical loss or damage. To find ambiguity in these cases would require us to "distort the meaning of the [contractual] language or resort to a strained contrivance" of the policies, see Madison Constr. Co., 735 A.2d at 106, which we decline to do.

For all these reasons, we hold that no business has met its burden to show business income or extra expense coverage under its respective policy.[11]

---

[11] Toppers attempts to distinguish itself by arguing that it seeks not coverage for lost profits but for continuing operating expenses. But under Toppers's policy, continuing operating

B.

Several businesses also seek civil authority coverage.[12] To establish coverage under the civil authority provisions, the businesses must demonstrate physical loss or damage to a property other than the insured premises and that an action of civil authority prohibited access to the insured premises because of that loss or damage. The businesses have not met either requirement.

No business alleged that a property other than the insured premises was damaged or suffered a physical loss or that an action of a civil authority prohibited access to the insured premises because of loss or damage to another property. Indeed, the closure orders were issued not in response to property loss or damage but to mitigate health risks to the public and slow the spread of COVID-19 by limiting person-to-person exposure. Even more fundamentally, the closure orders did not prohibit access to the businesses' properties. The businesses remained physically accessible; the closure orders merely prohibited certain uses of the buildings. See Philadelphia Parking Auth. v. Fed. Ins. Co., 385 F. Supp. 2d 280, 289 (S.D.N.Y. 2005) (applying Pennsylvania law) (finding no civil authority coverage where the civil authority

---

expenses are a part of business income and require physical loss. Like the other businesses, Toppers has failed to show physical loss; it therefore is not entitled to coverage for its continuing operating expenses.

[12] The businesses in Nos. 20-3124, 20-3594, 21-1038, 21-1039, 21-1106, 21-1107, 21-1109, 21-1175, 21-1240, and 21-1294 raise the issue of civil authority coverage on appeal.

grounded airplanes, which "may have temporarily obviated the need for Plaintiff's parking services" but "did not prohibit access to Plaintiff's garages and therefore c[ould] not be used to invoke coverage under Plaintiff's [insurance] policy"); see also S. Hosp., Inc. v. Zurich Am. Ins. Co., 393 F.3d 1137, 1141 (10th Cir. 2004) ("We hold that the civil authority provision does not apply because the FAA's order grounding flights did not itself prevent, bar, or hinder access to Southern Hospitality's hotels in a manner contemplated by the policies.").

For these reasons, we further hold that the businesses have failed to establish civil authority coverage. The Court empathizes with the difficulties that the businesses faced during the pandemic. Our role, however, is to determine whether the policies provide coverage for the businesses' losses, and we conclude that there is no coverage under the circumstances here. Because no business has demonstrated coverage under its policy, it is unnecessary for us to determine whether the insurers established that the virus or ordinance and law exclusions bar coverage.[13]

---

[13] Several of the Pennsylvania businesses ask us to certify questions to the Supreme Court of Pennsylvania related to the meaning of "physical loss of or damage" and the applicability of the virus exclusions. We will deny those requests for certification because they do not satisfy the factors set forth in United States v. Defreitas, 29 F.4th 135, 141–43 (3d Cir. 2022).

## IV.

For the foregoing reasons, we will affirm the judgments and orders of the District Courts.